```
            UNITED STATES DISTRICT COURT
                     FOR THE
                DISTRICT OF VERMONT


SAMANTHA MADDEN,                  :
Plaintiff,                        :
                                  :
          v.                      :    Case No. 2:09-cv-145
                                  :
JOSEPH A. ABATE, M.D.,            :
Defendant.                        :
```

## OPINION and ORDER

Currently pending before the Court are Defendant Joseph Abate's consolidated motion to dismiss and motion for summary judgment, ECF No. 94; Plaintiff Samantha Madden's motion to amend her amended complaint, ECF No. 104; and motions by both parties to seal their filings with regard to these motions. ECF Nos. 95, 101, 107. For the reasons set forth below, Abate's motion to dismiss Madden's "sexual assault" claim is **granted**. The "sexual assault" claim is to be struck from the amended complaint, leaving the battery claim intact. Abate's motion for summary judgment and Madden's motion to amend are both **denied**. Finally the motions to seal are **granted in part** and **denied in part**. Any confidential information in the parties' filings will remain sealed, while all other information will be unsealed.

## Background

Samantha Madden brought this action against Dr. Joseph Abate after Abate penetrated her vagina with his fingers during medical examinations she underwent because of hip and groin pain

she was having.  Abate did not explicitly inform Madden that he would be performing vaginal examinations, did not wear gloves during the examinations, did not use lubrication, did not make a note of the vaginal examinations in the medical records, and did not have a chaperone in the room during the examinations.

In her original complaint, filed on June 5, 2009, Madden indicated that she was pursuing claims for battery and medical malpractice.  Compl., ECF No. 1.  Pursuant to a discovery schedule issued by the Court on March 23, 2010, Plaintiff was to submit her expert witness reports by June 1, 2010 and both parties were to file any amendments to their pleadings by September 15, 2010.  ECF No. 25.  The discovery schedule was later amended such that all discovery was to be concluded and pre-trial motions were to be filed by March 2, 2011.  ECF No. 81.

During discovery, Madden failed to disclose a medical expert who would testify in her case-in-chief regarding liability on the medical malpractice or battery claims.  On February 7, 2011, she filed her first motion to amend the complaint, in which she sought to withdraw the medical malpractice claim, to characterize her battery claim as one for "sexual assault and battery" and to add a claim for "outrageous conduct."  Mot. to Amend, ECF No. 73. At a hearing held on February 16, 2011, the Court granted the motion to amend in part and denied it in part; specifically, the Court allowed Madden to strike the medical malpractice claim but

denied her motion to add a claim for outrageous conduct because Abate raised some questions as to whether "outrageous conduct" is actually a cause of action.  ECF No. 81.  However, the Court invited the parties to submit further briefing on the issue of the viability of an outrageous conduct claim, which they did. ECF Nos. 86, 89.  On March 16, 2011, Abate filed his consolidated motion to dismiss and motion for summary judgment.  On April 28, 2011, Madden filed her motion to amend the amended complaint, which seeks to avoid the question of whether outrageous conduct is a proper cause of action by re-pleading the claim as one for intentional infliction of emotional distress (IIED).

## Discussion

**I. Abate's Motion to Dismiss**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  At the pleading stage, the plaintiff has an obligation to provide factual allegations that are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Where a private litigant asserts a claim that is not based upon any recognized private right of action, the Court may dismiss the claim. *See Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 115 (2d Cir. 2007).

In her first amended complaint, and in her proposed second amended complaint, Madden titles her first cause of action "sexual assault and battery." Abate argues that the claim for "sexual assault" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because under Vermont law, although sexual assault is a criminal offense, no such civil claim is recognized. Abate is correct that the existence of a criminal statute prohibiting certain conduct does not in and of itself create a private right of action that may be brought by the victim of that conduct. *See, e.g., Joy v. Countrywide Financial Corp.,* NO. 5:10-CV-218-FL, 2011 U.S. Dist. LEXIS 17797, at *3 n.1 (E.D.N.C. February 23, 2011) ("[Defendant] correctly observes that, as these are state criminal offenses, no civil cause of action may be maintained by plaintiff for their violation." (citing *Diamond v. Charles,* 476 U.S. 54, 64 (1986)); *Larry v. City of the Dalles,* No. 09-CV-663-AC, 2009 WL 4894485, at *4 (D. Or. Dec. 16, 2009) (dismissing under Rule 12(b)(6) plaintiffs civil claim brought pursuant to Oregon's obstruction of justice statute, stating

4

"there is no civil counterpart to this criminal statue and, thus, no civil cause of action for it.").

Madden concedes that criminal statutes, in and of themselves, do not create private rights of action but attempts to rely upon *In Re: Estate of Peters*, 765 A.2d 468 (Vt. 2000), for the proposition that Vermont courts have explicitly recognized a civil cause of action for sexual assault. In that case, the plaintiff, who alleged she had been sexually abused by her husband, filed a complaint that included a single claim for "sexual assault and battery." *Id*. The Vermont Supreme Court noted that, although the trial court denied a motion to dismiss the claim, which "alleged both assault and battery, the [trial] court charged [the jury] only on battery." *Id*. 475 n.3. Madden, who cites no other authority suggesting the existence of a civil action for "sexual assault" under Vermont law, does not provide a substantive response to the lack of precedent supporting her position. Nor does she provide the Court with any helpful suggestions as to what authority the Court should draw on to determine the elements of such a claim in the absence of any case law recognizing a civil action for sexual assault.[1] Instead she

---

[1] While there is of course a common law claim for plain "assault," this does not appear to be the claim Madden wishes to pursue as she has not pled some of the essential elements -- namely, "intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension." *Glass v. City of Philadelphia,* 455 F. Supp. 2d 302, 365-6 (E.D.Pa. 2006) (citing Restatement (Second)

makes a generalized argument that justice and common sense dictate that where a patient is the victim of unwanted sexual touching by a doctor there must be some cause of action. Madden's appeal to broad notions of justice is not lost on the Court, but it misses the mark since it is clear that, regardless of whether she can bring a civil claim for "sexual assault," she can proceed with her battery claim.

Because Madden has not identified any authority establishing the existence of a civil cause of action for "sexual assault," much less identifying the elements of such an action, Abate's motion to dismiss the claim for "sexual assault" is **granted**. The "sexual assault" claim is to be struck from the amended complaint, leaving the battery claim intact.

**II. Abate's Motion for Summary Judgment**

Summary judgment is "'warranted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (quoting *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)); Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue*

---

of Torts, § 21).

*Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006). The moving party will be "entitled to a judgment as a matter of law [if] the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Abate raises two arguments that he should be granted summary judgment on the battery claim: (1) Madden cannot make out the essential elements of her claim without calling a liability expert in her case-in-chief, and (2) Madden's claim can only be brought as a medical malpractice claim, and not as a battery claim.

A) <u>Necessity of a Liability Expert</u>

Abate argues that where a plaintiff claims that she was the victim of a battery during a medical procedure she cannot make out the essential element of lack of consent without the testimony of a medical expert in her case-in-chief. Abate's argument starts with the premise that under Vermont law, "[i]n a medical context, a health care provider commits battery if the provider performs a procedure for which the patient has not given consent." *Christman v. Davis*, 889 A.2d 746, 749 (Vt. 2005). "Generally, consent to particular conduct, or 'substantially the same conduct,' bars recovery for a harmful invasion." *Id.*

7

(citing Restatement (Second) of Torts § 892A(2)(b)).  Abate then cites the jury instructions in his criminal prosecution as well as several out-of-jurisdiction cases for the proposition that the law generally presumes that patients consent to all touchings that are reasonably related to conditions for which they seek treatment.  Consolidated Mot. to Dismiss and Mot. for Summ. J. 19-22 (citing *Yoder v. Cotton*, 758 758 N.W.2d 630, 636 (Neb. 2008); *Prince v. Esposito*, 628 S.E.2d 601, 603 (Ga. Ct. App. 2006); *Commonwealth v. Simmons*, 397 N.E.2d 682, 684 (Mass. App. Ct. 1979); *Elias v. State*, 661 A.2d 702, 710 (Md. 1995); *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 796 (Me. 1976); *Jones v. Malloy*, 412 N.W.2d 837, 841 (Neb. 1987); *Bronneke v. Rutherford*, 89 P.3d 40, 43 (Nev. 2004)).  Putting these two premises together, each of which is reasonable on its own, and citing other out-of-jurisdiction cases, Abate argues that Madden cannot succeed on a medical battery claim without presenting an expert to testify as to whether the touching that occurred in this case was reasonably related to treatment of her hip and groin pain. *Id*. at 22 (citing *Williams v. Walker,* 995 S.W.2d 740 (Tex. App. Eastland 1999) (dismissal for lack of expert testimony appropriate where factual allegations relied upon by plaintiff in asserting the assault and battery claim were "an inseparable part of the rendition of medical services."); *Leon v. United States*,

No. SA-10-CV-0162 NN, 2010 U.S. Dist. LEXIS 85871, at *2 (W.D. Tex. Aug. 20, 2010) (same)).

Madden counters that a medical expert is not required to establish the element of lack of consent where it would be obvious to a lay person that the touching was not reasonably related to the medical treatment. She relies on the so-called "common understanding" exception to the requirement of expert testimony in medical malpractice cases. Under that exception, no expert testimony is required in a medical malpractice case "where the alleged violation of the standard of care is so apparent that it may be understood by a lay trier of fact without the aid of an expert." *Larson v. Candlish*, 144 Vt. 499, 502 (1984) (citing *Largess v. Tatem*, 291 A.2d 398, 403 (1972)); *see also Pontbriand v. Bascomb*, 186 Vt. 655 (Vt. 2009); *Provost v. Fletcher Allen Health Care*, 179 Vt. 545 (Vt. 2005). She argues that based upon the manner in which the vaginal touching was conducted in this case -- without gloves or lubricant, without the patient being informed of the procedure ahead of time, without a chaperone in the room, and without the doctor documenting the touching -- a lay jury would be entitled to conclude, without the aid of an expert witness, that the touching was sexually motivated and therefore not reasonably related to the medical treatment. She asserts that such a conclusion would be consistent with Abate's own testimony at his deposition, during which he acknowledged

that, in his capacity as a physician and assistant professor at the University of Vermont College of Medicine, he never taught any students to examine women in this manner and was not aware of any other orthopedic surgeons who performed internal examinations of women in this manner.  Pl.'s Statement of Material Facts ¶¶ 9, 13, 14, ECF No. 102-1.  She also points out that the manner in which the examinations were performed likely violated the regulations of the Occupational Safety and Health Administration, which require the use of gloves "when it can be reasonably anticipated that the employee may have hand contact with blood, other potentially infectious materials, mucous membranes, and non-intact skin contact[.]"  29 C.F.R. § 1910.1030.

In reply to Madden's "common understanding" argument, Abate first argues that, because this exception is drawn from the law of medical malpractice, it does not apply in a case such as this one, which sounds in battery.  Abate is unable to cite any case law stating that the common understanding exception does not apply in cases of medical battery and does not provide any compelling justification why the exception should not be extended to the medical battery context.  In fact, the rationale for the common understanding exception, which stems from the principle that expert testimony is required only when the subject of the testimony is "not within the sphere of the common knowledge of the lay person," *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir.

N.Y. 1999) (quotation and citation omitted), seems especially powerful in a medical battery case where the defendant is accused not of having exhibited poor medical judgment in deciding whether a particular procedure was medically necessary, but of having intentionally engaged in a sexually motivated touching.

    Abate next argues that, even if the common understanding exception may be applied to medical battery cases, it should not apply here in light of the fact that he has disclosed two expert witnesses who will testify that a vaginal exam is proper where a patient complains of hip and groin pain.  He asserts that, in light of these expert opinions, this case does not fall into the category of cases where the doctor's conduct is so obviously improper that no expert is needed to make out the plaintiff's case.

    Abate is correct that, if this case turned solely on the medical appropriateness of a vaginal exam as a diagnostic tool for a patient complaining of hip and groin pain, -- a matter clearly beyond the ken of the lay factfinder -- Madden would be unable to make out the elements of her claim without the testimony of an expert witness in her case-in-chief.  However, Madden's amended complaint, ECF No. 82, and statement of material facts, ECF No. 102-1, make clear that the gravamen of her lawsuit is that Abate performed the touching not for diagnostic purposes but for his own sexual gratification.  A sexually motivated

touching, even of an injured body part, clearly exceeds the scope of implicit or explicit consent a patient gives when he or she seeks medical treatment.  *See, e.g.*, *People v. Burpo*, 647 N.E.2d 996, 998 (Ill. 1995) (gynecologist may be prosecuted under Illinois law for aggravated criminal sexual assault where he engages in touching of genitals with sexual intent and not "for purposes of and in a manner consistent with reasonable medical standards" (internal citation omitted)); *Suarez v. State*, 901 S.W.2d 712, 723 (Tex. App. Corpus Christi 1995) (midwife's "conduct in engaging in acts of a sexual nature during [victim's] physical examination can only be considered consistent with a specific lascivious intent to exceed the scope of her consent to a proper, medical examination.").  That is to say, even if one accepts the premise that it would have been medically appropriate for a doctor to perform vaginal exams on Madden for diagnostic purposes, it would be relatively uncontroversial to conclude that if Abate's purpose in performing the exams was sexual rather than professional, then the touching was beyond the scope of consent.[2]

---

[2] It is worth noting that the two cases on which Abate attempts to rely for his argument that expert testimony is required to make out a medical battery claim, *Williams v. Walker* and *Leon v. United States*, did not involve allegations of sexual misconduct.  In *Williams*, the defendant surgically drained the plaintiff's abscess despite the fact that she had requested treatment with antibiotics.  995 S.W.2d at 741. In *Leon*, the plaintiff complained of complications she suffered as a result of an allegedly unnecessary medical procedure.  2010 U.S. Dist. LEXIS 85871, at *1.  Accordingly, the critical issue in each of these cases was the medical necessity of the procedures and not

Madden has identified several pieces of evidence, for example Abate's failure to wear gloves and alleged smelling of his hand after the exams, from which a lay factfinder, without the aid of expert testimony, could reasonably conclude that Abate's purpose in touching her vagina was his own sexual gratification.[3]  Because this case is at the summary judgment

---

any alleged sexual motivation by the doctor.

[3] Even if this case did not involve an allegation of sexual misconduct, it is at least a debatable proposition that the jury would be entitled to conclude, based on common knowledge and without the aid of an expert witness, that the manner in which Abate performed the vaginal examinations violated the standard of care.  *See Lanier v. Trammell,* 180 S.W.2d 818 (Ark. 1944) (physician's failure to wash hands and to sterilize instruments before conducting eye operation held to constitute sufficient proof of negligence without the need for expert testimony).

In fact, neither the defense experts nor Abate himself appear to dispute that certain aspects of the manner in which he performed the exams were clearly improper.  *See* Expert Report of William C. Myers, M.D., ECF No. 105-1 ("The fact that Dr. Abate did not wear gloves or have a chaperone for his limited intravaginal examinations is indeed a matter of ethical concern for the appropriate board in medicine to address."); Expert Report of William E. Garrett, Jr., M.D., Ph.D., ECF No. 105-2 ("I cannot condone the manner of the examination with respect to the issue of chaperones, gloves, discussion and explanation of the exam, and documentation by medical records[.]"); Abate Dep. 26:13-15, April 29, 2010, ECF No. 102-7 (acknowledging that he now knows that a doctor "should never touch the genitals of a female patient without obtaining her explicit verbal consent"); *id.* at 22:24 – 23:10 (acknowledging that he should have worn gloves while performing vaginal examinations and admitting that he failed to do so because he had become "callous").

Abate's admissions are especially noteworthy in light of the Vermont Supreme Court's statement, in the medical malpractice context, that "[w]e have no difficulty with the proposition that 'third party expert testimony is not necessary if a defendant doctor's own testimony establishes the standard of care and

phase, when the Court is required to "resolve all ambiguities, and draw all inferences, against the moving party," *Beth Israel Med. Ctr.*, 448 F.3d at 579, the Court cannot conclude that Madden will be unable to establish lack of consent during her case-in-chief without expert testimony.  The motion for summary judgment on the ground that Madden cannot prove the elements of her battery claim without a medical expert is **denied.**  At the close of the Plaintiff's case-in-chief, the Court will rule on whether she has presented sufficient evidence for the jury to find she has established the essential elements of her battery claim despite not calling an expert witness.[4]

B) Whether Madden's Claim Sounds Exclusively in Medical Malpractice

---

departure from it.'"  *Senesac v. Associates in Obstetrics & Gynecology*, 449 A.2d 900, 903 (Vt. 1982) (quoting *Hill v. Squibb & Sons, E.R.*, 592 P.2d 1383, 1389 (Mont. 1979)).

[4] In her opposition to this motion, Madden has asked that, if the Court rules that she does need a liability expert to make out her prima facie case, she be allowed to use her rebuttal expert, Dr. Hyman, in her case-in-chief.  Opp'n to Consolidated Mot. to Dismiss and Mot. for Summ. J. 4, ECF No. 102.  Because Madden failed to disclose a liability expert to testify in her case-in-chief during the period set forth in the Court's discovery orders and because Plaintiff's Counsel repeatedly made representations to the Court and to Defense Counsel that she had no intention of calling a liability expert during her case-in-chief, Madden will not be allowed to call Dr. Hyman during her case-in-chief.  *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (allowing rebuttal expert to testify in case-in-chief not permitted because doing so would "eviscerate the distinction between primary and rebuttal witnesses" and violate the court's progression order establishing timing of expert disclosures).

Abate also argues that he is entitled to summary judgement because, in a case such as this one, the only appropriate cause of action is medical malpractice.  He cites a Connecticut Supreme Court case for the proposition that "[t]he theory of battery as a basis for recovery against a physician has generally been limited to situations where he fails to obtain any consent to the particular treatment or performs a different procedure from the one for which consent has been given."  *Logan v. Greenwich Hospital*, 465 A.2d 294, 299 (Conn. 1983).  He argues that the issue in the instant case is not whether Madden gave consent at all, but whether Abate obtained her informed consent for the procedure by making a sufficient disclosure beforehand.

As was the case with his first argument for summary judgment, Abate's second argument is unpersuasive because he misapprehends what are the decisive issues in this case.  Based upon her amended complaint, it is apparent that Madden is not claiming that the touching was improper because Abate failed to notify her beforehand.  Instead, she is claiming that the touching was improper because it was for sexual purposes (though she does attempt to use the fact that he failed to notify her as some evidence of his improper purpose).  In the language of the *Logan* court, it is quite obvious that Madden alleges that Abate "fail[ed] to obtain any consent" to touch her for sexual purposes, and that the claim may therefore be brought as one for

15

battery.

The motion for summary judgment on the ground that Madden's claim sounds exclusively in negligence and not intentional tort is **denied**.

### III. Madden's Motion to Amend

Madden seeks to add to her complaint an intentional infliction of emotional distress (IIED) claim in order to avoid the question of whether "outrageous conduct" (the claim she attempted to add in the first amended complaint) is in fact a viable cause of action.  Abate opposes the amendment on the grounds that allowing the addition of a new claim would prejudice him and that amendment is futile because the IIED claim cannot survive summary judgment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (Reasons to deny a motion to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment.").

Abate argues that allowing amendment of the complaint to include the IIED claim will cause undue prejudice because it will require the reopening of discovery so that he can explore the factual basis of each of that claim's elements: "(1) conduct that is extreme and outrageous; (2) conduct that is intentional or reckless; and (3) conduct that causes severe emotional distress."

16

*Thayer v. Herdt*, 586 A.2d 1122, 1126 (Vt. 1990)(citing *Sheltra v. Smith*, 392 A.2d 431, 433 (Vt. 1978)).  In particular, Abate believes he would have to re-depose Madden and her damages expert to explore whether she has exhibited signs of severe emotional distress.  He also represents that, if the IIED claim is allowed to go forward, he will likely disclose his own psychological expert.  He argues that the reopening of discovery would be costly and delay trial of the case for at least four additional months.  Madden has indicated that she does not believe that amendment of the complaint would require the reopening of discovery and would not prejudice Abate because "he has known of the theories under which Plaintiff is pursuing him."  Mot. to Amend 2.

The Court agrees with Abate that adding a new claim that includes factual elements not contained in the original claim (in particular causation of severe emotional distress) would prejudice the defense by requiring the reopening of discovery. *See Black v. Finantra Capital, Inc.,* 418 F.3d 203, 210 (2d Cir. 2005) (affirming denial of motion to amend because it was "after the close of discovery" and was therefore "untimely and would be prejudicial to defendants").  Because Madden might be able to recover exemplary damages based on an IIED claim, it is especially reasonable that Abate would want to reopen discovery in order to assess whether and how Madden can prove the elements

17

of that claim.  It is also reasonable that Abate would want to explore the possibility of retaining his own psychological expert.  Because the proposed amendment would cause undue prejudice, the motion to amend is **denied**.

### IV. Motions to Seal

Both parties have moved to seal their filings with respect to the aforementioned motions because they contain "confidential personal information relating to the Plaintiff."  Consistent with a previous order regarding sealing in this case, issued at a motions hearing held on November 15, 2010, ECF No. 57, the motions are **granted in part** and **denied in part**.  The parties are ordered to submit redacted versions of their filings.  Any confidential information will remain sealed, while all other information will be unsealed.

This case is set for a pre-trial conference at 1:30 PM on the 10th day of August, 2011.  The matter will be placed as the number 1 civil case on the Tuesday, September 6, 2011, jury draw list which is scheduled to begin in Burlington at 1:00 p.m.

Dated at Burlington, Vermont this 6th day of July, 2011.

/s/ William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge